THE MERCANTILE NATIONAL BANK OF NEW YORK v. THE PEQUONNOCK NATIONAL BANK OF BRIDGEPORT, CONNECTICUT.

The "Act to regulate the practice of courts of law," approved March 10th, 1893 (*Pamph. L.*, p. 181), does not make provision for a contest as to the truth of the affidavits whereon an order awarding an attachment against a debtor has been made; if such affidavits are sufficient to support such an order, it cannot be questioned by counter-affidavits tending to show their falsity.

---

The Mercantile National Bank of New York, having entered up a judgment in the Essex Circuit Court against Edwin O. Quigley, and issued an execution thereon, which

was levied on personal and real estate of the defendant, obtained a rule to show cause why an attachment issued out of this court previously levied upon said personal and real estate of Quigley, in favor of the Pequonnock National Bank of Bridgeport, Connecticut, should not be vacated.

The same judgment creditor also obtained a rule to show cause why another attachment out of this court previously levied on the same property of Quigley, in favor of the Bridgeport National Bank of Bridgeport, Connecticut, should not be vacated.

Affidavits have been taken and these rules have been brought to hearing together.

Argued at June Term, 1895, before Justices VAN SYCKEL, MAGIE and LIPPINCOTT.

For the rule, *Thomas N. McCarter, Jr.*

*Contra, Gilbert Collins.*

The opinion of the court was delivered by

MAGIE, J. It is settled in this court that a judgment creditor of a defendant in an attachment may intervene and set aside the attachment if it was improvidently issued. *National Papeterie Co.* v. *Kinsey,* 25 *Vroom* 29.

Each of the attachments which relator seeks to vacate was issued upon the order of a Supreme Court commissioner, under the provisions of the act entitled "An act to regulate the practice of courts of law," approved March 10th, 1893. *Pamph. L., p.* 181 ; *Gen. Stat., p.* 2601.

By that act it is provided that in all cases in which a *capias ad respondendum* may issue against a defendant in an action on contract, the court, or a judge thereof, or a Supreme Court commissioner, may, by an order made for that purpose, award a writ of attachment against the property of the defendant in this state, whether he be a resident or non-resident.

Relator's contention is that the respective debts upon which

the orders awarding attachments were made, were not single and individual debts of Quigley, but the joint debts of Quigley and one Tuttle. His insistment is that the fact of the joint indebtedness sufficiently appears in the affidavits on which the orders were made, or, if not, at least upon the affidavits taken upon these rules.

If the indebtedness upon which these attachments issued was, in fact, joint, it is clear that the attachments were improperly issued, for upon such joint indebtedness a *capias ad respondendum* alone, against one of the joint debtors, could not have issued. By section 59 of the Practice act, upon proof of a joint indebtedness and the fraud of one joint debtor, a *capias* may be ordered against him and a summons may be joined therewith against the other joint debtors. But that practice is not within the provisions of the act authorizing an attachment against a resident debtor.

The only question is whether the fact so appears before us that we may take notice of it.

The affidavits upon which the orders of the Supreme Court commissioner were made are substantially alike, and each shows that the indebtedness to the attaching creditor was that of Quigley, although it was secured by the promissory note of Quigley and Tuttle. It is obvious, therefore, that the orders were properly made, and cannot be assailed for lack of jurisdiction to make them.

It remains to consider whether we can take into account the affidavits taken under the rule, which, it is contended, show the falsity of the affidavits on which the orders were issued, and that the indebtedness in each case was the joint indebtedness of Quigley and Tuttle.

In my judgment, we cannot consider the affidavits taken under the rule. The act of 1893 expressly authorizes an order for attachment in all cases where a *capias ad respondendum* could issue. Upon the original affidavits showing Quigley's liability and his fraud, such a writ could issue.

An order for a *capias ad respondendum* was always open to contest upon the ground of the insufficiency of the affida-

vits whereon it was granted.   In 1859 this court held that counter-affidavits, tending to show no indebtedness or an absence of fraud, were not admissible, but that the facts sworn to in the original affidavits must be taken to be true.  *Painter* v. *Houston,* 4 *Dutcher* 121.   This decision evidently produced the amendment to the Practice act, which was approved March 13th, 1861 (*Pamph. L., p.* 312), which is now substantially re-enacted in section 64 of the revised Practice act.   *Gen. Stat., p.* 2544.   By its provisions counter-affidavits may be taken and considered in respect to the truth of the affidavits on which an order to hold to bail has been made.

But no such provision is contained in the act of 1893, under which the orders for attachment were made.   Nor do I find it possible to apply the provisions of section 64 to the act of 1893.   The commissioner acquired jurisdiction to make the orders upon affidavits which the law made sufficient.

We may examine them and determine whether they are sufficient to support the orders.   But in my judgment we have no authority, unless conferred upon us by the statute, to admit a contest as to the truth of the affidavits.   The statute not having conferred on the court that power, we cannot exercise it.

The rules must, therefore, be discharged, with costs.